IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2002

## STATE OF TENNESSEE v. ALVIN CARROLL

**Direct Appeal from the Circuit Court for Lewis County**
**No. 6234     Robert E. Lee Davies, Judge**

---

**No. M2002-01012-CCA-R3-CD  - Filed May 30, 2003**

---

After being indicted for the sale of a controlled substance, the defendant filed an Affidavit of Indigency to obtain a court-appointed lawyer.  The State dismissed the drug charges against the defendant and later charged the defendant with aggravated perjury, a Class D felony, regarding his answers to the trial court considering his request for a court-appointed lawyer.  He was found guilty and sentenced as a Range I standard offender to two years in the Tennessee Department of Correction, with 180 days to serve and the balance on supervised probation.  In this appeal, the defendant presents the following issues for review: (1) the evidence was insufficient to support the jury verdict; (2) the trial court erred in requiring the defendant to go to trial without an attorney; and (3) the trial court erred in sentencing the defendant.  This is a case of first impression in Tennessee regarding an aggravated perjury  conviction  for making false statements to the trial court when requesting a court-appointed lawyer.  We conclude the evidence is sufficient to sustain a conviction of aggravated perjury.  We conclude the trial court did not err in requiring the defendant to go to trial without an attorney.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Daniel J. Freemon (on appeal), Lawrenceburg, Tennessee, for the appellant, Alvin Carroll.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Jeffrey L. Long, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case is one of first impression in Tennessee wherein the defendant, Alvin Carroll, was charged with aggravated perjury for making false statements during an official proceeding concerning his financial status in a hearing to determine his eligibility for court-appointed counsel.

Subsequent to being appointed counsel by the court, all charges against the defendant were dismissed by the State. The defendant appeals from a jury trial conviction for aggravated perjury, a Class D felony. The defendant contends the evidence was insufficient to support the jury verdict, the trial court erred in requiring him to go to trial in the instant case without an attorney, and the trial court erred in sentencing.

On January 9, 2001, the defendant was indicted for the sale of a controlled substance. The defendant filed an Affidavit of Indigency to obtain court-appointed counsel and appeared before the trial court to testify concerning his need for a court-appointed lawyer. On February 28, 2001, the trial court entered an order of nolle prosequi and the drug charges against the defendant were dismissed. On April 2, 2001, the defendant was indicted for aggravated perjury, a Class D felony, relating to the testimony given during his request for a court-appointed lawyer. He was found guilty and sentenced as a Range I standard offender to two years in the Tennessee Department of Correction with 180 days to serve and the balance on supervised probation.

The record reflects that on July 19, 2001, the defendant, the Assistant District Attorney General, and the trial judge met in the judge's chambers to discuss the order of the trial. The trial judge found that the defendant was not indigent and would not appoint a lawyer to represent the defendant. Because the defendant refused to obtain counsel prior to trial, the defendant proceeded *pro se*.

In this appeal, the defendant presents the following issues for review: (1) the evidence was insufficient to support the jury verdict; (2) the trial court erred in requiring the defendant to go to trial without an attorney; and (3) the trial court erred in sentencing the defendant. In determining whether the evidence is sufficient to support the verdict of the jury, we will review the facts as set out in the trial transcript.

## I. Facts

Donna Couch, the Lewis County Circuit Court Clerk, testified that she was present when the defendant was before the court seeking appointment of counsel. She said that he submitted an Affidavit of Indigency and that she had the original form. She explained to the jury that an Affidavit of Indigency is a form made available to people who are unable to afford their own attorney, asking the court to consider them eligible for court-appointed counsel. She said that the defendant signed his name to the form. She explained that after the form is prepared and the defendant's name is called, the defendant comes before the judge and makes an oath before the court that everything on the form is true and correct to the best of his knowledge. She said the defendant made an oath and attested to the information on the form. She said the defendant listed his address, date of birth, and telephone number, and answered "no" when asked if he was employed. She said he did not answer the question concerning his income from work. She said he answered that he received governmental assistance in the form of monthly disability payments of $530. She said he did not list any other income. She said the form asked the defendant to list all money available from any source, and he answered "none." She said the defendant answered "none" to questions concerning all vehicles or

vessels owned, their value, and what is owed on each. She said the defendant answered "none" when asked to list all real estate owned, solely or jointly, within the last six months, its value, and what is owed. The defendant answered "none" when asked to list all assets or property not already listed as owned within the last six months or expected in the future. She said that he put on the affidavit that he last filed his income tax in 1995, when he made $8000. She said he submitted the form to the court while under oath during an official proceeding of the Circuit Court of Lewis County. At this time, the State entered the Affidavit of Indigency into evidence. The *pro se* defendant did not cross-examine this witness.

Wanda Graham, the court reporter, testified that on January 29, 2001, the defendant was before the court to submit his Affidavit of Indigency. She said she prepared the recordings and transcripts during the defendant's indigency proceeding. The State introduced the transcripts of the defendant's indigency hearing, and the witness read the transcripts into the record. She said there was a conflict with Mr. Drolsum, who was the assistant public defender for the district, because he had something to with another defendant or another case that the defendant was involved in that would prevent him from representing the defendant. She said that because there was a conflict, the court would have to appoint a private attorney to represent him. The State marked the defendant's initial indigency hearing transcript into evidence.

The indigency hearing transcript reflects a January 29, 2001, colloquy between the defendant and the trial court judge. After taking an oath, the defendant testified that the information he put forth on the Affidavit of Indigency was true and correct. The defendant stated he receives a monthly disability check in the amount of $530. The defendant stated that he and his wife were unemployed. The defendant stated that he has two children, ages four and three. The trial court judge stated that he found the defendant indigent within the meaning of the statute and appointed the defendant counsel.

Jackie Lawson, an employee of Child Support Services of Tennessee, testified that her office is responsible for aiding in the collection of child support if someone owes and is in arrears of making these payments. She said she was in court on February 21, 2001, in a hearing with the defendant concerning his child support and heard the defendant's testimony. She said that her office collects back child support by placing liens on property, garnishing wages, or taking someone to court for contempt hearings for not paying support despite having the means to pay. She said that when her office puts a lien on property or equipment in the amount of child support owed, the defendant cannot sell the property or equipment until they satisfy their lien. She stated that her office had a lien on fifty-three acres of the defendant's property on Happy Hollow Drive. She said the defendant owned three pieces of property at the time her office placed the original lien on his property.

On cross-examination, Ms. Lawson stated that her office placed a lien on the defendant's property on June 17, 1999. She stated the defendant was found to be in contempt of court before paying $5500 in back child support. She said her office did not release the lien on his property after he paid his delinquent child support, and the lien remained in effect for almost a year when the

defendant was once again in arrears. She said even after the defendant paid his child support in full, her office did not release his property. She said she did not know why the lien was still on the land after he paid his debts. She said the lien on the defendant's property was still on his land the day he filled out the Affidavit of Indigency. She said she did not know if the defendant's land was worth anything to the defendant with the liens on the land. The defendant asked the witness if she remembered when he came into her office to pay the second lien on his property, and she said she did. The defendant asked the witness if she remembered that he had to call Lori Reed, begging her to release the lien after his debt was paid so that he could get an attorney. She said she remembered the defendant tried to get the lien released so it could be sold. The defendant entered the cancelled check into evidence.

On redirect, Ms. Lawson testified that she types the lien documents, but attorneys on staff with her office prepare and approve the liens. She said the attorneys in her office make the determination as to when a lien is released and make decisions about filing liens. She said that although her office may place a lien against someone's property, this does not affect their ownership. She said the property remained in the defendant's name on the tax rolls and elsewhere throughout the period that her office kept a lien on his property.

Bob Johnston, the Lewis County Property Assessor, testified that he maintains ownership records and evaluation records of all taxable property in the county. He said his records show the defendant owns two pieces of property in his name only and one piece of property with his first wife. He said the property was on file on January 29, 2001. He stated that the defendant owns fifty-seven acres, a residence, and a small lot. He said the appraised value of the defendant's residence was $113,500 for both the land and the structure. He said the appraised value of the smaller tract of land was $25,700. He said the defendant also owned another parcel of land on Columbia Pike, valued at $3600. The prosecution entered the Lewis County documents of the defendant's land descriptions into evidence.

On cross-examination, Mr. Johnston testified that the defendant had been to his office several times to find his parcel of land on Columbia Pike, and the surveyor was unable to locate it. He said he thought the land had been sold off, leaving a smaller piece of land. He said he was unaware that he had a mortgage on his property on Happy Hollow Drive.

Kenneth Turnbow, the Lewis County Clerk, testified that it is his job to title and register vehicles. He stated he searched the State's database and came up with five vehicles in the defendant's name and held jointly with his wife. He stated the State's database lists the defendant as the owner of the following five vehicles: 1994 Ford coupe, 1975 truck, 1996 Ford station wagon, 1990 Ford F-150 pickup, and a 1972 Mast mobile home. He stated that the database information did not indicate the defendant had transferred ownership of any of the vehicles listed. The prosecution entered the vehicle information into evidence.

On cross-examination, Mr. Turnbow testified that the records go back five or six years and will show the defendant as the owner of the vehicles, even if he transferred his property. He said the

defendant's property continues to show up as belonging to the defendant, even if he transferred the property to someone else. He said that until the next owner comes into the office, applies for a title, and registers the vehicle, the records do not show transfer of ownership.

Bill Bates, the vice-president of the Bank of Perry County, testified that he handles most of the decisions to grant loans to bank customers. He stated he has done quite a bit of business with the defendant over the years. He said the defendant presently has a checking account and had a joint account with his wife on January 29, 2001. He said the deposit amounts from December 8, 1999 to February 7, 2001, totaled $26,500. The prosecution entered the bank statement of the defendant into evidence. He stated the defendant has five active loans with his bank, totaling $108,000. He said the defendant pays approximately 10% interest on his loans. He said the defendant obtained a loan for his home for approximately $60,000. He said the defendant has a second mortgage on his house for $10,000. He said the defendant has a loan for his mobile home in the amount of $21,000. He said the defendant got a loan in 1999 for $12,000 on a 1986 bulldozer, and the loan is still current. He said the bank has a secured interest in property and equipment owned by the defendant. He said the defendant has a loan from his bank for $8700 for a 1963 Ford dump truck. The prosecution entered the loan documents from the bank into evidence. Mr. Bates said the defendant is in "good shape" and "paid up" on all of his loan payments to the bank. On cross-examination, Mr. Bates testified that if the defendant came into the bank and attempted to get a loan for a lawyer, he would have probably given him a loan.

The defendant recalled Donna Couch. She testified the defendant came into her office and brought a deed of trust to make a bond for $10,000. She said that at one time the defendant told her that he was putting up his property on another case. She said that the defendant asked her to approve some of his property for another case, and she said "no."

On cross-examination, Ms. Couch, the clerk for Circuit Court and Juvenile Court, said the court has specific rules, set by the judges, as to how a bond is approved. She said that if the bond is for $10,000, the equity in the property has to equal one and one-half times the value of the property. She said that in order to prove this with the court, the property "can't be tied up or have other lien holders on it." She said someone can make bond by using a bondsman or by paying cash. She said she told the defendant that he could not put his property up for someone else because he had other liens on his property and other issues going on at that time. She said she did not feel that taking property from the defendant as a bond for someone else would secure a good and proper bond for the State of Tennessee.

The defendant then called himself as a witness. The defendant testified that he was charged with perjury for "lying in our court system or something." He said the indictment reads "aggravated perjury," but he doesn't know what that means. He said the perjury charge comes from a false charge the State had against him. He said he applied for a lawyer, which he neither needed or used. He said he talked to the attorney for approximately two minutes and did not know if the State paid him any money to talk to him. He said the next day he was told by the attorney that the State had dismissed all charges against him. He said that a few days after the dismissal, he received a call that

the State was going to "get me for perjury, lying to the court system, filling out some kind of form saying I didn't have no money." He said that at that time, he did not have any money for a lawyer in this case. He said because he had to make a $10,000 bond and they would not accept his land for the bond, he had to borrow the money from his son to make a bond for $1025. He said the bondsman took him to the bank and cashed his disability check, the first one he had gotten for four months back pay owed to him, to make the $10,000 bond. He said that he did not complete or sign the Affidavit of Indigency. He said his niece filled out the Affidavit of Indigency. He said that he wanted the jury to compare his signature on the lien documents with the signature on the Affidavit of Indigency.

On cross-examination, the defendant stated that Kimberly Diane Carroll is his wife, and the State charged her, as they had him, with selling Lortabs. He said his wife pled guilty to the charges and was sentenced. He said Bill Bates would not have loaned him money for an attorney, because he received something in his mail box that can verify Mr. Bates made a false statement. He said he obtained the money for the $10,000 bond from his disability check. He said he never had the Affidavit of Indigency and never filled it out. He said his niece asked him questions from the Affidavit of Indigency, and she filled in the answers. He said his niece asked him if he had any real estate, and he responded by saying, "Yeah, I got a bunch of ole real estate, but I can't' touch it, can't do nothing with it." He said he first saw the form when he went to Donna Couch's office, after he found out about the perjury charges against him. He said he remembered being under oath and answering the judge's questions regarding the Affidavit of Indigency. He said he was not wearing glasses that day, and he thought his niece wrote down only what he told her to write. He said his current expenses consist of a $540 house payment, an $80 light bill, and a $34 telephone bill. He said he consolidated his bills when he began receiving disability, and his son pays the payments on his backhoe and bulldozer. He said he pays fifteen to twenty dollars each month on his water bill and pays only the interest on his van payment. He said he consolidated all of the loan payments from the bank into a $60,000 note with just one monthly payment. He said he pays approximately $890 each month in bills. He said that, before she went to jail, his wife helped with the bills by babysitting and working. He said that on January 29, 2001, he owned the pieces of land. He said that two pieces of land cannot be found and one piece of land is made up of 53 acres. He said he is only able to pay taxes on the 53 acre lot because city officials will not allow him to obtain building permits or sell the lot. He said the property remains in his name. He said he still has a dump truck in his name, even though it was sold on June 19, 1999. He said that under the Uniform Commercial Code, property "that you ever owe on, you can't sell, give away or nothing as long as the State of Tennessee has a lien against you." He said the $26,000 in deposits to his bank account was money he borrowed from the bank and then deposited back into his account to finish his house. He said that he needed the money to finish his house and that he "ain't worked in seven months." He said he was depositing his loan money into his account because he was not drawing a check from anyone else. He said he was "robbing Peter to pay Paul." He said his disability check now goes to the bank on the first of every month. He said he has rental property, but the rental income goes to the bank. He said that has sold one of his lots in the last year to pay on back child support. He said he sold additional lots for $8500, and he received $4000 from the sale. He said Mr. Bates' testimony was a surprise to him

because when he tried to borrow $2200 from the bank, Mr. Bates said, "No, I can't' 'cause you're going to have to get some of these paid off before I can give you another nickel."

## II. Analysis

### A. Sufficiency of evidence

The defendant contends the evidence was insufficient to support the jury verdict of aggravated perjury and argues that his alleged perjury was not material to his appointment of counsel. The State argues that false information on an indigency form is material and is absolutely integral to the determination of appointment of counsel.

In determining the sufficiency of the evidence, this Court will not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 305 (Tenn. Crim. App. 1994). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). A guilty verdict, approved by the trial judge, credits the testimony of the State's witnesses and resolves all conflicts of testimony in favor of the theory of the State. State v. Hatchett, 560 S.W.2d 627 (Tenn. 1978). Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden of demonstrating why the evidence is insufficient to support the verdict returned by the jury. State v. Tuggle, 639 S.W.2d 913 (Tenn. 1982), State v. Butler, 900 S.W.2d 305, 309 (Tenn. Crim. App. 1994). Therefore, this Court will not disturb a guilty verdict due to the sufficiency of evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tuggle at 914, Butler at 309.

Under Tennessee Code Annotated section 39-16-702(a), a person commits perjury who, "with the intent to deceive:
(1) Makes a false statement, under oath;
(2) Makes a statement, under oath, that confirms the truth of a false statement previously made and the statement is required or authorized by law to be made under oath; or
(3) Makes a false statement, not under oath, but on an official document required or authorized by law to be made under oath and stating on its face that a false statement is subject to the penalties of perjury."

Tennessee Code Annotated section 39-16-703 defines aggravated perjury as an offense committed by a person who, with the intent to deceive: (1) commits perjury as defined in section 39-16-702; (2) the false statement is made during or in connection with an official proceeding; and (3) the false statement is material. Aggravated perjury is a Class D felony. Tenn. Code Ann. § 39-16-703.

A conviction for aggravated perjury requires that the false statement be material. See Tenn. Code Ann. § 39-16-703(a)(3). The Code defines the test for the materiality element of perjury as whether "the statement, irrespective of its admissibility under the rules of evidence, could have affected the course or outcome of the official proceeding." Tenn. Code Ann. § 39-16-701(1).

If we were to conclude that the phrase, "official proceeding," related to the defendant's initial drug charges, we would fail to see how the appointment of a public defender versus the retention of a private attorney would have affected the outcome of the drug charge. We conclude that the phrase "official proceeding," in the context of the instant case, means the defendant's request for a court-appointed attorney in his drug case.

There are many stages to an "official proceeding," and Tennessee courts have held that some of those proceedings are appropriate for prosecution of aggravated perjury. See State v. Joseph and Evangeline Combs, No. E2000-2801-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 799, *194-95, (Tenn. Crim. App. September 25, 2002, at Knoxville)(conservatorship proceeding); State v. Melvin E. Beard, No. M2000-02207-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 78, (Tenn. Crim. App. January 31, 2002, at Nashville)(community corrections revocation hearing); State v. Lane, 56 S.W.3d 20 (Tenn. Crim. App. 2000)("no contact" hearing); State v. Charles E. Bowden, No. M1998-00469-CCA-R3-CD, 1999 Tenn. Crim. App. LEXIS 1337, (Tenn. Crim. App. December 30, 1999, at Nashville)(grand jury proceedings); State v. Johnny Lee Bowman, No. 03C01-9606-CC-00226 LEXIS 89, (Tenn. Crim. App. January 21, 1998, at Knoxville)(sworn statement to law enforcement); State v. Forbes, 918 S.W.2d 431 (Tenn. Crim. App. 1995)(deposition); State v. Ronnie Calvin "Pig" Styles, No. 03S01-9108-CR-67 LEXIS 24, (Tenn. Crim. App. January 25, 1993, at Knoxville)(post-conviction hearing).

In the instant case, the evidence is sufficient to support the jury's verdict. The defendant either completed the Affidavit of Indigency or allowed someone else to complete his Affidavit. In any event, the defendant signed the Affidavit of Indigency, attesting to its truth and correctness. The defendant's Affidavit contained at least four material false statements relating to his financial status. After taking an oath at his indigency hearing, the defendant made a material false statement to the trial court when he affirmed all of the false statements contained in his Affidavit of Indigency. The record reveals that the defendant owns several vehicles and tracts of land, despite encumbrances upon his property. Indeed, his home is valued on the tax rolls at $113,500. The defendant contends that because of encumbrances on the property its value is zero. While we may accept this as true, the defendant failed to fully disclose to the trial court ownership of any and all property. For this reason, we conclude sufficient evidence exists to sustain the defendant's conviction for aggravated perjury.

## B. Right to Counsel

The defendant argues the trial court erred in requiring the defendant to go to trial without an attorney. The State contends the defendant waived his argument regarding the appointment of counsel for failure to prepare a proper appellate record.

Whenever an accused represents that he is financially unable to retain his own attorney and desires that an attorney be appointed to represent him, it is the duty of the trial court "to conduct a full and complete hearing as to the financial ability of the accused to obtain the assistance of counsel, and make a finding as to the indigency of the accused." Tenn. Code Ann. § 40-14-202(b); See Tenn. Sup. Ct. Rule 13(1). An indigency hearing is required at any point the defendant claims indigency. State v. Dubrock, 649 S.W.2d 602, 605 (Tenn. Crim. App. 1983). If the trial court finds that the accused is indigent, but capable of defraying a portion of the cost of his representation, it is the duty of the trial court to enter an order directing the accused to pay into the registry of the court a sum that the trial court determines the accused is capable of paying. Tenn. Code Ann. § 40-14-202(e). In the instant case, the trial court referred to his ruling regarding the defendant's indigency by stating the following:

> Mr. Carroll has asked for a lawyer, but I'm not going to appoint him a lawyer. That's where we are at this stage of the proceedings, because I have found that Mr. Carroll is not indigent. So if you remember, General when I set this case two months ago or whenever it was, the case had been continued several times and I was waiting for Mr. Carroll to inform me who was going to represent him and Mr. Carroll kept telling me he did not have a lawyer and couldn't afford a lawyer. I told him that I was not going to accept that, that I thought he could afford a lawyer and, therefore, I set the case for trial and I left it up to Mr. Carroll to come to court today with or without his lawyer.

Indigency, in and of itself, does not necessarily mean total destitution. The judge need only be satisfied that representation essential to an adequate defense is beyond the means of the defendant. United States v. Cohen, 419 F.2d 1124, 1127 (8th Cir. 1969). Conversely, there is authority to support the proposition that when an accused has sufficient income and assets to employ private counsel, but stubbornly refuses to employ counsel, the conduct of the accused constitutes a knowing and intelligent waiver of the right to the assistance of counsel. See United States v. Titus, 576 F.2d 210, 211 (9th Cir. 1978); United States v. Sparlin, 569 F.2d 1314 (5th Cir. 1978); United States v. Gates, 557 F.2d 1086 (5th Cir. 1977) United States v. Rubinson, 543 F.2d 951 (2nd Cir. 1976) After requesting the trial court to proceed pro se, the defendant represented himself at his trial on July 19, 2001.

The defendant and the State both agree that the record is devoid of anything that would allow adequate review of what evidence the Court considered in making the determination that the defendant was indigent for the purposes of defending himself in the instant case. The State argues that the record supports the existence of a pretrial ruling relating to this issue, and the defendant failed to include transcripts of such an indigency hearing in the record. However, the record does not include transcripts of an indigency hearing concerning the instant case. The defendant is entitled to relief if he was indigent at the time of arraignment and the trial judge arbitrarily denied him counsel. See McKeldin v. State, 516 S.W.2d 82 (S.Ct. 1974). However, the defendant is not entitled to relief if he was not indigent or if he chose not to have an attorney. The trial court has wide discretion in matters regarding the appointment and relief of counsel, and its actions are not set aside absent a plain abuse of that discretion. State v. Branum, 855 S.W.2d 563, 566 (Tenn. 1993). Because we conclude that the appellate record is inadequate to review this issue, we must presume

the trial court ruled correctly. See State v. Ivy, 868 S.W.2d 724, State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

## C. Sentencing

The defendant argues the trial court erroneously based its decision to deny him probation on the need for deterrence. The defendant argues he should have been sentenced to community corrections or full probation.

When there is a challenge to the length, range, or manner of service of sentence, it is the duty of this Court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-01(d). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court followed procedures, made findings of fact that are adequately supported in the record, and weighed and considered the factors and principles of sentencing, we may not disturb the sentence, even if a different result would have been preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The burden is now on the defendant to demonstrate the impropriety of his sentence.

A standard offender convicted of a Class D felony is subject to a sentence ranging from no less than two to no more than four years. Tenn. Code Ann. § 40-35-112(a)(4). The sentence to be imposed by the trial court for a Class D felony is presumptively the minimum sentence in the range, when no enhancement or mitigating factors are present. Tenn. Code Ann. § 40-35-210(e). The trial court is to increase the sentence within the range as appropriate, based on the presence of any applicable enhancement factors, and then reduce the sentence as appropriate, based on the presence of any mitigating factors. Tenn. Code Ann. § 40-35-210(e).

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The defendant was the only witness to testify at his sentencing hearing. The defendant testified that he is the sole care giver to his three of his five children. He said his children range in age from three to twelve years old. He said he is on medication for heart trouble and is under a doctor's care. He said he is disabled and unemployed, due to his heart condition. He said he did not feel he had committed perjury, because he did not intentionally lie to anyone. He said it was not his intention to lie when the application was filled out. He said he did not understand what "category" he needed to be in to have a court-appointed attorney. He said he was under the impression that

"when you's under a doctor's care and on disability, anyways, that's what the court-appointed lawyers were for, somebody that wasn't able to work or whatever." The presentence report reflects the defendant was fifty-nine years old at the time of his sentencing hearing and was arrested for first degree burglary over thirty years ago.

The trial court began sentencing at two and one-half years after enhancing the defendant's conviction based upon his 1967 conviction for first degree burglary. The trial court reduced his sentence from two and one-half years to two years after considering that the defendant's crime did not involve any serious harm to anybody but himself, his reputation in his community, and the court. The trial court stated that it considered whether the defendant qualified for full probation, but found that he did not. The trial court commented that the defendant failed to express remorse for the crime at issue and determined that to grant full probation would unduly depreciate the seriousness of the offense. The trial court stated that there is a need to provide an effective deterrent against committing aggravated perjury. Specifically, the trial court stated that "people in this county need to know that if you are caught lying in court, you will go to jail for that offense, because that's just one thing I'm not going to tolerate." The trial court determined that the defendant was eligible for an alternative sentence of split confinement and probation. The defendant was sentenced to 180 days in the Lewis County Jail with the remainder of his two-year sentence to be served on probation. The defendant contends that the trial court improperly sentenced the defendant, based upon its reasons for denying full probation. We disagree.

Because the defendant was found guilty of a Class D felony and was sentenced as Range I standard offender, he is presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(5), (6) (1997). Once a defendant is entitled to a statutory presumption of alternative sentencing, the State bears the burden of overcoming the presumption. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, if a defendant seeks full probation, the burden shifts in that he bears the burden of establishing his suitability for probation. Id.

The record reflects that the defendant never admitted his crime and continued to justify his actions. We conclude that there is a definite need for deterrence for the crime of aggravated perjury and that this crime is particularly serious. We agree with the trial court that to sentence the defendant to full probation would be to depreciate the seriousness of the offense. Furthermore, the defendant failed to meet his burden of proving that full probation would subserve the ends of justice.

**Conclusion**

For the aforementioned reasons, we affirm the judgements of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-11-